## Kramer *against* Sandford.

An endorser is entitled to notice of non-payment, although he may have received from the drawer a chose in action as a collateral security to indemnify him for his endorsement. There can be no presumptive waiver of notice, where there has been no waiver of recourse to the maker; and the acceptance of security is not such unless it has been taken in satisfaction.

ERROR to the District Court of *Allegheny* county.

Henry Sandford and others against Allen Kramer. This was an action on the case in *assumpsit*, founded upon the defendant's endorsement of a negotiable note. No notice had been given to the defendant of the non-payment of the note; but the plaintiffs insisted that notice was waived by the endorser's taking a judgment bond and the proceedings upon it.

The plaintiffs, after reading the note and endorsement, dated 4th of November 1840, for $169.75, at six months, gave in evidence a judgment bond of the drawers of the note to the defendant, dated 24th of November 1840, in the penalty of $18,000, with a condition annexed, reciting that the defendant was an endorser for the drawers to an amount of $9000, and that they would indemnify and save him harmless from all his responsibility. A judgment was entered on this bond on the 8th of July 1841, upon which a *fieri facias* was issued to July term 1841, and levied on defendant's personal property. The plaintiff then gave evidence to show that the defendants in the judgment had real and personal property sufficient to secure the payment of the judgment.

The court below was of opinion that the plaintiff was entitled to recover, and directed a judgment accordingly.

*Dunlop*, for plaintiff in error, argued that the acceptance of a collateral security was not a waiver of notice, and cited 5 *Mass.* 170; 1 *Serg. & Rawle* 334; 11 *Johns.* 180; 4 *Cranch* 141.

*Austin, contra*, cited 3 *Kent's Com.* 113; 2 *Greenleaf* 208; 7 *Wend.* 169.

The opinion of the Court was delivered by

GIBSON, C. J.—An endorser is entitled to notice wherever it is necessary to protect him; for he is not presumed to have waived it to his detriment. It is useless to him, where he has taken a general assignment of the maker's effects, and thus obtained, beforehand, all the advantage that his own or the endorsee's vigi-

[Kramer v. Sandford.]

lance could give him; and it has accordingly been held that he assumes the maker's debt when he receives his means to pay it. The chance of the maker's acquirement of other property, to which he might resort if the fund in his hands should fall short, is so inconsiderable as to fall within the maxim *de minimis*. When the endorser, therefore, has got all which the maker possessed, he has got all which the law supposes can be of value to him. But the supposed waiver of notice, in consideration of a chose in action given as a collateral security, contingent and inadequate to produce perfect safety, as every chose in action must be, stands on a less firm foundation. The acceptance of such a security is never thought to be a waiver by the parties themselves, though it is frequently a motive for the act of endorsement. Collateral security is cumulative in its very essence; and it is never suffered to impair the obligation of the contract immediately between the parties. It may be accepted, though known to be inadequate at the time, the endorser relying for the rest on the maker's other means and his own energy of pursuit, when warned of the necessity of exerting it; and it would be contrary to the understanding of the parties to make the acceptance of such a security a substitute for notice. There can be no presumptive waiver of notice where there has been no waiver of recourse to the maker; and the acceptance of a security is not such, unless it has been taken in satisfaction. Notice may be necessary to make the very security available on which the endorser is supposed to have relied, but which he may have reserved for the critical moment. A judgment bond, which was the security in this instance, is seldom entered up immediately; and the endorser ought to have notice when the time for action has arrived, for by the delay of a day or an hour the golden opportunity may be lost. The banks often take such bonds, ostensibly for their own security, but to be entered at the request of the endorsers; yet no one ever thought that the endorsers were therefore not to have notice. The practice is very common. In this case there was no real estate to be bound, and an immature judgment would have been fruitless; but there was the more need of notice of dishonour to expedite an execution, when the time came, against the maker's personal property. He was an endorser of accommodation paper; and, as a surety is held to nothing which is not explicitly exacted by his contract, he is not presumed to have relinquished any of its privileges.

This doctrine of waiver in consideration of a security, has no footing in Westminster Hall; for the endorser in *Corney* v. *Da Costa*, which has been referred to as the germ of it, received effects from the drawer to the amount of the note, and thus became the party to take it up. The property was put into his hands avowedly for that purpose, and he consequently took the place of the principal debtor. The English judges, on the contrary, have pointedly expressed their dislike of all innovation on the subject.

IV. — 42                2c*

[Kramer v. Sandford.]

In *Orr* v. *Maginnis* (7 *East* 359), Lord Ellenborough expressed strong dissatisfaction at *Bickerdike* v. *Bollman* (1 *Term Rep.* 405), the first case in which a holder was exempted from giving notice on any pretence whatever; and declared he would anxiously resist any extension of its principle. The same sentiment was expressed also by Chief Justice Eyre, in *Walwyn* v. *St. Quintin* (1 *Bos. & Pul.* 654); by Lord Alvanley, in *Clegg* v. *Cotton* (3 *Bos. & Pul.* 241); by Chief Justice Abbott, in *Cory* v. *Scott* (3 *Barn. & Ald.* 623); and by Chief Justice Tindal, as well as by Mr Justice Bosanquet, in *Lafitte* v. *Slatter* (6 *Bingh.* 623). And there are cases to show that an endorser or a drawee is to have notice even where the principal debtor has become bankrupt or notoriously insolvent, though it is impossible to conceive how the want of it could prejudice him. The *dictum* of Mr Justice Bailey, in *Claridge* v. *Dalton* (4 *Maule & Selw.* 226), "that a party who cannot be prejudiced by want of notice, shall not be entitled to require it," is not universally true; though he seems to have laid down the true rule in *Brown* v. *Maffey* (15 *East* 222), that every endorser ought to have notice wherever he has a remedy over; and perhaps the American doctrine, properly understood, goes no further. "We do not mean to be understood," said Chief Justice Parsons, in *Bond* v. *Farnham* (5 *Mass.* 173), "that where an endorser receives a security to meet particular endorsements, it is to be concluded that he waives a demand, or notice, as to any other endorsement. But we are of opinion that if he will apply to the maker, and representing himself *liable* for the payment of any particular endorsements, receives a security to meet them, he shall not afterwards insist on a fruitless demand on the maker, or on a useless notice to himself to avoid payment of demands which, on receiving a security, *he has undertaken to pay.*" I grant that where the security is money or effects put into his hands to satisfy the debt, he changes place with the maker and loses his original character: he is no longer an endorser, and cannot claim the privileges of one. But no judge has said that a chose in action, transferred to meet, not the note at its maturity, but the contingency of the endorser's eventual liability, dispenses with notice to him; or that, as a collateral security, it is a waiver of his recourse to the maker. *The Mechanic's Bank* v. *Griswold* (7 *Wend.* 165), was the case of a general assignment; and the endorser in *Leffingwell* v. *White* (1 *Johns. Ca.* 99), agreed to become the principal debtor. In *Mead* v. *Small* (2 *Greenl.* 207), the maker was to pay in labour by the very terms of the agreement between the endorser and the endorsee, and not to be sued in any event; a circumstance which made the endorser the immediate debtor, without regard to the mortgage held by him. Lastly, the taking of an insufficient mortgage, in *Prentiss* v. *Danielson*, (5 *Conn. Rep.* 175), was only held not to restore the endorser's liability after it had been discharged. It would seem, therefore, that Chancellor Kent's con-

[Kramer v. Sandford.]

clusion from these authorities—that notice is not required where the endorser has protected himself by an assignment or collateral security (3 *Comment.* 113),—is not sustained by them as a principle applicable to all cases in every variety of circumstances. The true criterion seems to be the obligation to take up the note. When that remains with the maker, it continues to be the duty of the endorsee to apprize the endorser of the maker's default: where it has devolved on the endorser himself, he needs no notice. Certainly a bond and warrant taken to be held in reserve, cannot turn his contingent responsibility into an absolute one, and dispense with performance of the condition of demand and notice as a part of the title. It is unfortunate that the courts ever dispensed with it for any cause; and, as said by Chief Justice Abbott, in *Cory* v. *Scott*, " introduced nice distinctions into the law, instead of adhering to a plain and an intelligible rule." Exceptions, however, have been made, and so far as they lead we are bound to follow: but we go no further.

Judgment reversed, and a *venire de novo* awarded.