FREEMAN *vs.* SWAN et al.

1. It is a well settled rule, both at law and in equity, that the allegations and proof must correspond, in order to entitle the plaintiff to a recovery.

2. Complainant filed a bill to enjoin a judgment at law founded on certain notes, which he alleged to have been given on the following consideration: Having purchased a tract of land from one M., who claimed under a void purchase from defendants' father, the legal title being in the defendants by descent from their maternal grandfather, complainant afterwards purchased defendants' interest therein, and executed to them these notes, "upon the express understanding and agreement, that, if M. *should say that he had paid* for the land, the notes should be returned to the complainant." The answers denied this allegation, and the proof showed, that the notes were executed with the understanding that they should be given up if M. *had paid for the land. It was held:*

That this proof did not entitle the complainant to a decree.

3. The Appellate Court will decide no question on error, which is not made and acted on in the primary court, and that action assigned for error and insisted upon; unless it be a want of jurisdiction, apparent on the face of the proceedings in the court below.

ERROR to the Chancery Court of Madison.
Heard before the Hon. E. D. TOWNES.

Freeman filed his bill in the Chancery Court of Madison, setting forth that one Daniel McDuff, late of Jackson county, died seized of a tract of land in the latter county, which descended to his heirs at law; that on the division of said lands, lot No. 4, containing $156\frac{5}{100}$ acres, was set off by the commissioners to Nathaniel, Nancy and Wm. S. Wilder, children and heirs at law of a daughter of the intestate, who had died before her father; that Nathaniel Wilder, sr., the father of these children, sold the lands thus set off to them to one Wm. H. Moore, for a full consideration, who afterwards sold them to complainant for a valuable consideration, and made him a title in fee simple for the same; that on his purchase, Moore

went into possession of the premises, and continued to occupy them until he sold them to complainant, who has possessed them ever since, and has cleared and otherwise improved them; that Nathaniel Wilder, sr., has died, leaving an estate which has descended to his children, probably composed in part of the money received from Moore for these lands; that Nathaniel Wilder, jr., has conveyed his interest to Moore, but that Wm. S. Wilder and Walter D. Swan, who has married Nancy Wilder, refused to do so; that Wm. S. Wilder and Swan told complainant that Moore had never paid for the land, and that they claimed their shares thereof; that on this representation complainant executed and delivered to them his four notes for $125 each, upon the express understanding and agreement, that if Moore should say that he had paid for the land, the notes should be returned to the complainant; that they were to make him a good title in fee simple at all events, but his notes were not to be paid except on condition that Moore should say that he had not paid Nathaniel Wilder, sr., for the land, and they gave him then a title bond, which he exhibits with the bill; that Stephen McBroom had become the owner, by assignment from Wm. S. Wilder, of one of the notes, on which he has brought suit and recovered judgment against the complainant; that Moore insists that he has made full payment for the lands, and Wm. S. Wilder and Walter D. Swan now refuse to convey to complainant, or surrender up his notes, but insist on their payment.

The bill prays a perpetual injunction to the judgment of McBroom; that the notes be delivered up to be cancelled; that defendants Wilder and Swan be decreed to convey the premises to him; and for general relief.

Wm. S. Wilder, Swan and wife, McBroom and Moore are made defendants, who all answer.

Wilder admits, that he is the son of Nathaniel Wilder, sr., and that he derived his title to lands sold to the complainant by descent from his grandfather, McDuff, as set forth in the bill; has heard that his father sold to Moore some sort of interest in the lands for five hundred dollars, only $180 of which was ever paid; that when these transactions took place respondent was an infant, and has no such knowledge of them as to state them with any certainty; he knows nothing of

complainant's purchase from Moore, nor of his residing upon, or improving the lands, except as advised by the bill. He admits the death of Nathaniel Wilder, sr., in 1832; that he died intestate; that his estate has been settled up and distributed, and the portion of respondent was $450, which was all he ever received; but does not know of any particular transactions from which his father acquired his estate.

. He admits that, in March, 1841, (he having attained his majority in January of that year) he came to Jackson county to look after the interest of himself and Swan, (who had married his sister, Nancy Wilder,) in the estate of their grandfather; that at this time he sold to complainant their interest in the lands mentioned in the bill, and described as lot No. 4 of lands belonging to the estate of Daniel McDuff, deceased, which had been allotted to them on the division of said lands among the heirs at law of said McDuff; that complainant agreed to give them $500 for their interest, and to secure the payment of this sum, he made the four notes for $125 each alluded to in the bill, three of them payable to this respondent, and one to Walter D. Swan; but in this there was a mistake, as only two of said notes should have been payable to respondent, and the other two ought to have been payable to Swan; that on receiving these notes, respondent and Swan executed to complainant the bond for title exhibited with the bill; he denies that these notes were executed "upon the express understanding and agreement, that if said Moore should say that he had paid for said lot, the notes should be null and returned" to complainant; he avers that the notes were unconditionally executed, delivered and received, with this exception and understanding, that they were to be paid before the title was made to the lands. He tenders, with his answer, a deed of conveyance for the land described in the bill, executed by himself and Swan and wife, to the complainant, by which all the interest of the grantors is conveyed to Freeman. This deed is duly acknowledged and certified.

Swan and wife answer substantially the same, except as to the sale of the lands by Wm. S. Wilder to the complainant. They set out, that said Wilder made the sale for them; that he has informed them that the terms were such as are set out in his answer, and shown by the notes and title bond; they

never authorized him to sell on any other, and have never sanctioned or known of any other terms, and especially those set out in the bill.   They refer to the deed from their co-defendant and themselves to complainant, and ask that it be considered as a part of their answer also.

Moore answers the bill, saying that he bought the land in question of Nathaniel Wilder, sr., and took a bond for titles ; that he paid the purchase money in three payments—one-third when the purchase was made, a part afterwards to said Wilder, and the remainder after Wilder's death to Bryant B. Thompson, guardian of the heirs of said Wilder, and at this time he delivered up the bond which he had taken for titles to said Bryant B. Thompson, guardian as aforesaid, for the purpose of procuring a deed to said lands.

Flannagan, the witness to the notes, deposes, that his understanding of the condition on which they were given was, that they were in consideration of the interest of Swan and Wilder in the land, and if Wm. H. Moore had ever paid for the land, then the notes were to be null and void; that Swan and Wilder bound themselves in a bond for a thousand dollars to make complainant a title to the land when he should make the last payment; after the notes were made, complainant stated to Wilder and Swan that they would have to sue him on them, should Wm. H. Moore refuse to pay them.

Geron, a witness for complainant, testifies, that about the time complainant was buying the interest of Wilder and Swan in the land, they told witness that if Moore had paid Nathaniel Wilder, sr., $500 for the land, or if they could be satisfied that he had done so, they would claim nothing of complainant, but relinquish to him their interest as heirs.

Wm. H. Moore, being released by complainant, is examined by him as a witness, and testifies, that he bought of Nathaniel Wilder, sr., all his interest in the real and personal estate of Daniel McDuff, deceased, for $600; that he paid part to Wilder, sr., a part to his administrator, and the residue to the guardian of one of his children.   This witness sold the land to the complainant, and conveyed it to him by deed with full covenants of warranty.

John McDuff, a witness for defendants, proves, that he is a subscribing witness to the bond for titles; that the contract

between the parties was, that complainant was to give the four notes for $125 each for the land, with the further sum of $60 in cash; that when the notes and title bond had been executed, the defendants demanded the cash payment, which was refused by the complainant; that an altercation arose between them, in which complainant remarked that he was fast enough for them, as he had their bond and would sue them on it. This was at the house of complainant, and the parties immediately separated.

There is some other proof in the record, but it is wholly immaterial.

On this state of facts, the Chancellor dissolved the injunction, and dismissed the bill at the costs of the complainant.

This decree is here assigned for error.

C. C. CLAY, jr., and J. W. CLAY, for plaintiffs in error:

1. The oral testimony did not contradict the written contract—the title bond and notes. They did not disclose the contract; the former only bound defendants, under a penalty, to make title to the land; the latter only bound complainant to pay certain sums at certain times. They did not show that they referred to the same subject matter, or that one was the consideration of the other. They did not disclose any of the terms of the contract, but were incomplete on their faces. The evidence offered did not deny the time of payment or sum to be paid; but showed the notes were to be returned to complainant if the purchase money of the land (for which they were given) had been paid by Moore. The admissibility of the evidence seems to be fully sustained by the case of Simonton v. Steele, 1 Ala. 357.

. . But if the oral testimony did contradict the written contract, yet it was admissible, as showing fraud and want or failure of consideration. The general rule, that parol testimony is inadmissible to contradict a written contract, does not obtain where it is alleged that the party was induced, by fraudulent representations of another, to enter into a written contract with him. 3 Phil. Evid. H. & C.'s Notes 1475; 3 S. & P. 329. In cases of fraud, as well as mistake or innocent omission, parol evidence is admissible, and courts of equity will relieve. 1 Ala. 170; 8 ib. 353; 5 Cond. Rep. U. S. 409;

1 Story Eq. § 152-3-4; Sug. Vend. & Purch. 203, Note 110.

The bill alleges, that defendants represented M. had not paid for the land, and on that ground they claimed payment therefor of the complainant, who was thereby induced to execute his notes; but with the express understanding that they were to be null and returned to him, if M. said he had paid for the land. Defendants do not deny their representations as charged, or that complainant was thereby induced to give his notes, thus admitting this allegation. If this representation was false, it was a fraud upon complainant, and he should be allowed to prove it.

Again, the testimony was admissible to prove want or failure of consideration, the notes being given for land that had been paid for by M. under the false impression that he had not paid for it. 3 Phil. Evid. H. & C.'s Notes 1458.

If the oral testimony was admissible, did it not sustain complainant's bill and entitle him to a decree? As above stated, defendants do not deny the charge, that they represented that M. had not paid for the land, and that F. was thus induced to assume the payment; or that M. had paid their ancestor for the land. M. swears he had paid for it; Taylor swears defendants told him the land was passed to M. for money, and that this was told him before they assigned complainant's note to McBroom. The admission of the assignor before the assignment binds his assignee. 1 Greenl. Evid. § 190. Thus it appears, defendants knowingly and falsely alleged to complainant that M. had not paid for the land. Defendants McBroom, Swan and Moore were not present when the contract was made. The Swans say their co-defendant, Wilder, made the contract, neither of them being present. Hence their answers need not be looked to as to the terms of sale. Wilder denies the material allegation of the bill, that the notes were executed upon the express understanding and agreement that "if M. should say he had paid for the land, they should be null and returned." Flannagan swears he understood it as agreed, "that if M. had ever paid for the land, then the notes were null and void."

The Chancellor, more speciously than soundly, as we think, says this does not sustain the allegation of the bill. The substantial fact, on the existence of which the notes were to be

returned, was, that the land had already been paid for by complainant's vendor, M. The reference to M. was only to ascertain the fact. The witness' mind naturally seized on the fact, without regarding the mode of proving the fact. The witness substantially sustains the allegation. If he had sworn in the words of the complainant, his testimony would have been worthless. The objection that the bill says, "if M. said he had paid," &c., and the witness says, "if M. had paid," &c., and that the latter does not sustain the former, we think savors of quibbling and hair-splitting.

Geron swears, defendants told him, about the time of their sale to complainant, that "if M. had paid their father, or they had reason to believe so, they would not claim anything from complainant and would surrender their claim." This shows that they rested their claim, and asserted it to Freeman, on the ground that M. had not paid for the land. It corroborates Flannagan, and sustains the allegation of the bill, that "if M. said he had paid for the land, the notes were to be null and returned."

When the testimony of these two witnesses is considered, in connection with the silent admission by defendants of complainant's allegation, that "they represented to him that M. had never paid for the land, and because he had not they claimed it," and their admission to Taylor that M. had paid for it, the bill is sustained by one witness and strong corroborating circumstances.

McDuff was examined by defendant McBroom. That neither complainant nor defendants, Wilder or Swan, examined him, argues that they knew he did not know their contract, or did not hear all that passed. His not signing the notes as a witness together with Flannagan, strengthens this presumption. His testimony confirms it; for, while he says he saw the title bond executed, he does not say he saw the notes executed. He does not sustain the answers of Wilder and Swan; he alleges a contract that no one else does. Hence, it is manifest that he did not know the terms of the agreement, and that his testimony should not weigh anything.

ROBINSON & JONES, *contra :*

1. The contract between the parties was in writing, and it

was inadmissible to vary or contradict it by parol evidence. West & West v. Kelly's Ex'rs., 19 Ala. 353; Evans v. Bell, 20 ib. 309.

2. If the evidence was admissible, as showing a want of consideration, then we say: 1. This defence was adequate at law; 2. It is not supported in fact, as there was a sale of an actual interest in land, and a title bond given. The parol stipulation was not sought to be set up to avoid the contract, but to amend the written contract, and be itself specifically performed; 3. This can only be done in chancery, where some term of the contract has been omitted from the writing, through mistake, accident or fraud; and never then, when the amendment is sought, as in this case, on evidence which is loose, equivalent, or contradictory. 1 Story's Equity 177, § 157.

LIGON, J.—It is a well settled rule, both at law and in equity, that the allegations and proof must correspond in order to entitle a plaintiff to recover; and in a court of chancery the positive responsive denials of the answer must prevail, unless they are overrode by the direct testimony of two witnesses; or of one witness, with strong corroborating circumstances.

In the case under consideration, the only allegations in the bill which give the complainant the slightest claim to relief in a court of equity, are those which relate to the contract between the complainant and the defendants, Wilder and Swan.

No equity can arise to him, or any other person, out of the transaction between Moore and Nathaniel Wilder, sr., in respect to the lands. The wife of Wilder, as is shown by the bill, died before her father, Daniel McDuff, from whom these lands descended directly to her children; so that the marital rights of her husband could never attach to them, and the only relation by which he could intermeddle with the real estate thus descended to his infant children, would be as their natural guardian, or as their general guardian duly appointed by the proper court. In either of these characters he would not be allowed to make a private sale of their lands; and the purchaser at such sale, if he presumed to make one, would

take no title, either at law or in equity, against the wards. The only way in which their title can be divested is, by sale under the rules prescribed by our statutes, (Clay's Dig. 268, § 6–7 and 225, § 23,) and there is no pretence that there was any attempt to comply with them in the sale made by Nathaniel Wilder, sr., to Wm. H. Moore. As he had no title, he could convey none to the present complainant.

Before the contract of sale by Wilder and Swan to the complainant, the parties were tenants in common of the land mentioned, each party having an interest of one third; the two former claiming by inheritance from Daniel McDuff, deceased, and the latter under the conveyance of Nathaniel Wilder, jr., to Wm. H. Moore, who was complainant's vendor.

Freeman's equity, if he has any, must, as we have said, arise out of his contract with the defendants Wilder and Swan. On this subject we find substantially these allegations in the bill: "That Wilder and Swan told him, that William H. Moore had never paid Nathaniel Wilder, sr., for the land; that on this representation he executed and delivered to them his four notes for $125 each, upon the express understanding and agreement, that if Moore should say that he had paid for the land, the notes should be returned to the complainant; that they were to make him a good title to the lands at all events, but his notes were not to be paid, except on condition that Moore should say, that he had not paid Nathaniel Wilder, sr., for the land."

To these allegations the answer of Wm. S. Wilder interposes a direct and positive denial; and that of Swan and wife denies it upon the authority of information from Wm. S. Wilder, who was authorized by them to make the sale, but who, they assert, had no authority from them to attach any such condition to the payment of the purchase money.

The allegation in the bill, in the terms in which it is made, is unsustained by the proof of a single witness. Geron, who does not pretend that he heard the agreement between the parties, and who does not inform us whether the declaration which he proves was made before or after the notes and title bond were executed, or that it was known to complainant before he made the purchase, testifies, that about the time the complainant purchased the land, he heard Wilder and Swan

say that "if Moore had paid Nathaniel Wilder, sr., $500 for the land, or if they could be satisfied that he had done so, they would claim nothing of the defendant."

Flannagan, who is the only subscribing witness to the notes, and who, with John McDuff, witnessed also the title bond, says that Wilder and Swan said, that "if Moore had ever paid Nathaniel Wilder, sr., for the land, the notes were to be null and void." This witness also testifies to another fact, which does not so well harmonize with the one just recited, and which tends strongly to contradict the version of the agreement given in the bill; and that is, that complainant told the defendants, Wilder and Swan, after the notes were made, "that they would have to sue him on them, should Wm. H. Moore refuse to pay them." What could have called forth such an expression from him, if he was to be discharged from the payment of the sum secured by the notes, and they were to become "null and void if Moore would say he had paid the elder Wilder for the land?"

Opposed to this, we have the positive answer of Wilder, founded on his own knowledge; that of Swan and wife, based on information and belief; the testimony of John McDuff, a subscribing witness to the bond for titles, and the notes and title bond made between the parties at the time of the transaction, and which are utterly inconsistent with the allegations in the bill, and the evidence of Flannagan and Geron. These must prevail.

We have not considered the question as to the admissibility of the parol proof in this case, which received the attention of the Chancellor; because, we are not advised by the record that any objection was made to it by the defendants in the court below; and we will decide no question, on error, which is not there made by the parties and acted on by the court, and that action assigned and insisted upon in this court as error; unless it be a want of jurisdiction, apparent on the face of the proceedings in the court below. Gordon v. McLeod, 20 Ala. 242 ; Wyatt v. Judge et al., 7 Por. 37.

Our conclusion is, that the decree of the Chancellor is correct, and must be affirmed.