JAMES TAYLOR *v.* SAMUEL M'CUNE, for the use of T. G. BRANT.

1. The blank endorsement of a note by one not a party to it, although out of the usual form, makes the endorser *primâ facie* liable as such, and entitles him to the advantages of an endorser in a suit against him by the payee.

2. Whether, in such action on a note so drawn, the endorser is liable as such, or as guarantor, depends on the intention and understanding of the parties.

3. In suing upon the guaranty the maker of the note is a competent witness for the plaintiff.

4. The case of Leech *v.* Hill, 4 W. 448, commented upon.

ERROR to the District Court of Allegheny.

*Sept.* 12. This was an action on the case, brought by Samuel M'Cune against James Taylor, to recover the amount of a note, which was alleged to have been made by Alexander Short, in September 1842, payable to Samuel M'Cune, at six months, and endorsed by James Taylor, the defendant. No demand was ever made on Short, or notice of non-payment given to Taylor. The plaintiff offered Alexander Short, the maker of the note, to prove the making and endorsing and consideration of the note, which was objected to by defendant, on the ground that he is party to the note. The objection was overruled, and the witness testified under exception.

Alexander Short, sworn.—I gave a note to M'Cune for $251, for bail of boat, September 1842. James Taylor endorsed it before it was delivered. The note was payable to Samuel M'Cune. I got Taylor's endorsement to secure M'Cune. M'Cune would not take the note without an endorsement.

Francis C. Flanegan, sworn.—The note was given to me for collection by M'Cune, and was burnt 10th April, 1845.

Andrew Wylie, sworn.—Short was insolvent at the time of the note, and has been since.

In order to show that the note in question, which was destroyed, was made payable to James Taylor, the defendant, and by him endorsed to M'Cune, instead of being made payable to M'Cune, as plaintiff's witnesses suppose, and also to show what M'Cune's understanding was as to Taylor's undertaking, the defendant called John Nicholson, who identified two other notes, dated in the same month with the one in question, drawn by Alexander Short, payable to James Taylor, for the engine of the boat, and endorsed by Taylor to the witness. Nicholson testified as follows:—"Notes shown. I got this note from Short; and this one also, for the engine of the boat. They were to give me endorsed notes for the engine. I would not let go the boat till I got them. Don't remember of seeing M'Cune after the boat was brought down, till after the engine was in. He told me some time after, that he had this fixed, that Taylor had endorsed the paper. Some time afterwards, he told me *he had neglected to have it protested*—but he supposed it was not necessary; that if a note was *endorsed* by a man, it stood good."

2 Q 2

The notes to Nicholson were read, dated 10th September, 1842. They were regular in form.

The evidence being closed, the court (LOWRIE, J.) instructed the jury, that, according to the decision in Leech v. Hill, 4 W. 448, if they believe that this was an informal note, given by Short and Taylor to secure the plaintiff for the amount due him, the note is to be construed according to the understanding of the parties.

The verdict was for the plaintiff. The plaintiff in error made the following assignment of errors :—

1. The court erred in admitting Alexander Short as a witness.

2. The court misconceived the law, as ruled in the case of Leech v. Hill, 4 W. 448.

3. The law laid down by the court, as applicable to this case, is indefinite and uncertain, and calculated to mislead the jury.

4. The court should have instructed the jury, that upon the whole of the evidence in the cause, the plaintiff was not entitled to recover.

*Hampton,* for the plaintiff in error.—1. If Taylor was to be considered as an original promissor, and equally liable with Short, then Short was clearly incompetent as a witness, because he would be interested in proving that fact, as it would throw one-half the debt on Taylor.

2. In Leech v. Hill, the drawer, endorser, and payee of the note understood that the defendant was to be considered in the light of a *guarantor*, and therefore was not entitled, by his own agreement, to notice of demand and non-payment.

In the present case, there is no evidence to show that Taylor ever agreed to stand as a guarantor, or in any other capacity than that of an *endorser* of what he supposed to be a negotiable note. M'Cune, the holder of the note, understood Taylor to be the mere endorser, and only liable as such.

Herein, therefore, the present case differs most materially from the case of Leech v. Hill.

There was no demand on the maker, or notice to the endorser, either of the non-payment of the note, or insolvency of Short.

In Leech v. Hill, the court says: "but if the maker was known by the defendant, before and at the time when the note was payable, to be insolvent, notice of non-payment was not requisite." The converse of this proposition I take also to be law, that if the maker was *not known* by the defendant, before and at the time when the note was payable, to be insolvent, then, and in that case, notice of

non-payment *was requisite;* and this matter of notice of the insol-
vency of the maker, was a fact to be proved by the plaintiff in this
case before he was entitled to recover. So far from there being
any evidence to show that Taylor knew of Short's insolvency, the
evidence is strongly the other way. The only direct evidence on
the subject is the testimony of Andrew Wylie, who says, " Short
was insolvent at the time of the note, and has been since." But it
was not pretended that Taylor knew this important fact; on the
contrary, it was the policy of Short, when he went to Taylor to
procure his endorsement, to conceal his insolvency, and induce him
to believe he was perfectly able to meet all his liabilities. And is
it not fair to presume that if Taylor had known he was insolvent,
he would not have endorsed his paper ?

3. To *what parties* are the jury to understand the court to refer ?
To *all* the parties to the note, or only to Short and M'Cune ? For
it is manifest that Taylor understood himself to be responsible only
as an endorser of a negotiable note, and that M'Cune understood
it in the same way. If, therefore, the court had instructed the
jury that, in order to enable the plaintiff to recover, it was incum-
bent to him to prove that Taylor knew of Short's insolvency at the
time the note became payable, and therefore a demand on the
maker, and notice of the non-payment, were not requisite, the
jury would have found for the defendant without the least hesi-
tation.

4. This action is on the instrument itself, and not on a separate
guarantee by a third person. There was no demand on Short for
four years after the note fell due, and no notice to Taylor for the
same time. Taylor was therefore deprived of an opportunity of
securing himself until Short's circumstances became desperate.
And, according to the case of Gibbs *v.* Cannon, 9 S. & R. 198, as
well as Leech *v.* Hill, the court should have instructed the jury
that the plaintiff was not entitled to recover.

*Ritchie,* contrà.—1. Short was admitted as witness because he
was *not interested.* The charge of the court implies that Taylor
gave his endorsement as a guarantee, and of course Short was
equally as liable to Taylor as to M'Cune, and therefore a compe-
tent witness.

2. The case of Leech *v.* Hill was rightly construed by the court.
The understanding of the parties was found by the jury on the
facts in evidence in the case. It appears from the evidence of Alex-
ander Short, that he gave a note to M'Cune, which was endorsed

by Taylor before it was delivered, thus bringing the case within the principle of Leech v. Hill, that "where an endorsement of a note, not negotiable, by one not a party to it, is intended by all concerned as a guarantee, the holder may write over the blank endorsement an engagement to that effect:" Gibbs v. Cannon, 9 S. & R. 202. The fact of the insolvency of the drawer of the note is sufficient, no matter whether the guarantor had notice of it or not. It appears from the record, that on the trial, ignorance of Short's insolvency was not alleged by the defendant, and no attempt was made by him to show that he was prejudiced by the want of notice.

3. The fair inference from the testimony is, that Taylor knew of Short's insolvency at the time he became the guarantor. The fact that M'Cune refused Short's note without a guarantor showed that Short's credit was not good.

4. Short's insolvency at the time the instrument was drawn, was proved at the trial.

*Sept. 24. 1849* The opinion of this court was delivered by

BELL, J.—The same strictness of proof is not indispensable to make the guarantee of a note or bill effective, as is necessary to sustain an action on the paper itself, and, therefore, the guarantor of a negotiable instrument, who is not at the same time a party to it, according to the custom of merchants, is not discharged from his liability by the neglect of the holder to give him notice of the default of the parties primarily liable, unless he can show by express evidence, or from fair inference, that he has actually sustained loss by the omission: Worrington v. Furber, 8 East, 242; Van Wart v. Wosky, 3 B. & C. 439; Gibbs v. Cannon, 9 S. & R. 198. If the party who ought first to be called on was solvent at the time the note or bill matured, and became insolvent afterwards, before notice, an inference of actual damage to the guarantor will be drawn from the want of notice, sufficient in itself to defeat the holder's action. This inference will obtain, until rebutted by proof that, had notice been given, payment could not have been obtained from the original parties: Phillips v. Astling, 2 Taunt. 206; Swineyard v. Bowes, 5 M. & S. 62; Chitty on Bills, 10, Am. Ed. 441–2. But if these parties were bankrupt or wholly insolvent before the bill or note fell due, the inference will be, that no injury arose from the want of notice, though this inference may also be rebutted by actual proof: cases above cited; Holbrow v. Wilkin, 1 B. & C. 10; 2 D. & Ryland, 59. Our own case of Leech v. Hill, 4 W. 448, adopts this doctrine, and shows

its applicability to a note informally endorsed, like that in suit here, by a stranger to it, where there is proof of an understanding by all the parties that the informal endorser was, in truth, a guarantor who undertook for the eventual payment of the note. A note so drawn and endorsed, was there said to be an anomalous instrument, subject to be construed "according to the contract and understanding of the parties exhibited in the evidence," and that the plaintiff was not *primâ facie* bound to a discharge of all the duties ordinarily due from a holder to an endorser. But in treating of the nature and consequences of such a contract, the learned judge who delivered the opinion of the court observed that, as it was impossible, "on account of the informality of the instrument, to treat it as a negotiable note, it can be considered in no other light than as an agreement of the defendant to become the surety or guarantor of the note, and as authorizing the plaintiff to write over his signature an engagement to that effect." This proposition, which was not called for by the exigencies of the case, must be read in connexion with the preceding observations, that point to the necessity of explanatory proof, for otherwise it is not sustained by the authorities upon which the decision of Leech v. Hill was confessedly based. The judgment there pronounced looks for its support principally to the oral testimony of the defendant's undertaking, and the object his endorsement was intended to subserve. This was indeed the very point of the case; and so considered, it is in entire harmony with the Massachusetts and New York decisions, to which the court referred. In all of these, the event was made to depend on the express undertaking of the defendant as surety, manifested, not merely by his irregular endorsement of the note, but by evidence *aliunde*. In each of them the question was, whether the object of the endorsement was to give to the maker of the note credit with the party to whom it was passed, resting on the good faith of the endorser. If so, it was thought this intent authorized the holder to write over the blank endorsement an express undertaking to pay the money: Josselyn v. Ames, 3 Mass. R. 274; White v. Howland, 9 Mass. R. 314; Nelson v. Dubois, 13 Johns. R. 175; Campbell v. Butler, 14 Johns. R. 349. As illustrative of the principle of these determinations, it may be sufficient to state the facts of that last cited. A. agreed to sell a wagon to B., provided he would give security for payment of the money. B. offered to give C. and D. as endorsers of a note to be drawn by B., which A. agreed to accept. Notes were accordingly made payable to A. or order, endorsed by C. and D., and delivered to A. In the action against

one of the endorsers, the other was examined as a witness, and testified that the object of the endorsement was to give the drawer a credit with the payee, and so secure eventual payment of the note. And upon his evidence it was held that A. might write over the endorsement a special promise to guaranty payment. In Herrick v. Carman, 12 Johns. R. 159, which perhaps may be regarded as the first of this class of cases in this country, the same principle was broadly asserted, but, inasmuch as there was no proof of a special undertaking, it was ruled the payee could not recover against the endorser; for, said the court, it is to be presumed from the unaided fact of his endorsement, that he put his hand to the paper to give it currency, as the note of the maker and payee, as first endorser. This was followed by the other determinations already cited, and the series was closed by Tillmon v. Wheeler, 17 Johns. R. 326, which is so very like the case in hand, that it may not be unprofitable to state it somewhat at large. It was an action brought on an alleged special guarantee of a note drawn by M. & A. to the order of the plaintiff, and endorsed in blank by T., the defendant. On the trial, the note was produced with T.'s endorsement, but without any special undertaking written over it. It was proved that the makers of the note were desirous to purchase a quantity of leather from the plaintiff, on the credit of their joint note. This was refused, unless they procured a good endorser or satisfactory security; and among other persons the plaintiff named T., as one with whose security he would be satisfied. Shortly afterwards, M. & A. again applied to the plaintiff for the leather, and produced the note in suit with T.'s endorsement, but without any agreement or undertaking in writing to guaranty the payment of it. The plaintiff accepted the note, and in consideration of it, and solely on the responsibility of T., as he then declared, sold the leather to the drawers. Under this state of facts, the plaintiff insisted, that, as he had refused to sell the goods without security, and having, upon the faith of T.'s endorsement, so sold them, the latter ought to be considered as having guarantied payment of the note, and consequently the plaintiff had a right to write over the blank endorsement a special guarantee, comporting with those counts of his declaration which averred such an undertaking. But, after observing that the case could not be distinguished from Herrick v. Carman, except that there the suit was against the defendant as endorser, while here it was upon an implied special guarantee, which did not vary the principle, the court held, that in the absence of proof that T. knew for what purpose the note was designed, or of a special promise by him, or

communication between him and the holder of the note, there was nothing to disprove the legal presumption flowing from the appearance of the paper; that T. put his name to it as second endorser, on the responsibility of the payee, and for the accommodation of the drawers and payee, as first endorser; that there was nothing in the transaction from which an inference could be drawn, that he was privy to the original contract between the drawers and payee; and that the declaration of the vendor, at the delivery of the goods, that he sold them solely on the responsibility of T., could not vary the nature of the paper, given without proof that the same declaration was made or communicated to T. before he endorsed the note. To this was added the observation, that "if, under the circumstances of the case, the endorsement be construed to be a special guarantee, and an original contract in consideration of the delivery of the goods, there is no case where a note is innocently endorsed by a second endorser, previous to the endorsement by the first, in which, without his knowledge, the responsibility may not be varied." This judgment is, it appears to me, decisive of the present litigation. If there be a difference between them, it is against our case, in which there is no evidence that the dealing between the original parties was on the credit of the defendant's endorsement. All that appears is, that the plaintiff refused to take Short's note without an endorsement; but even this fact was not communicated to Taylor, who, for aught that appears, was wholly ignorant of the negotiation between Short and M'Cune. That the latter regarded Taylor simply as an endorser, is clear from the testimony of Nicholson. And how can we undertake to say, in the absence of countervailing proof, and in the teeth of the legal presumption, that Taylor esteemed himself as occupying any other position than that of second endorser, anticipating the signature of the payee? Under the principle already discussed, the evidence in the cause presents us with nothing, on the faith of which we can hazard a different conclusion. And it follows that the charge of the court was in this important particular incorrect. There was no *scintilla* of proof of an understanding of the parties, differing from that to be drawn from the instrument itself, and consequently the plaintiff was not entitled to recover.

There is nothing in the objection made to Short as a witness. He was not called to prove equality of liability between himself and Taylor. His testimony went directly to establish a liability on his part to respond to Taylor for whatever might be recovered against the latter, together with the costs of the action. His

interest was, therefore, *in equilibrio*, or if it preponderated, it was adversely to his oath.

Judgment reversed, and a *venire de novo* awarded.