## Slack *versus* Kirk.

1. Scott drew a note for his own accommodation to the order of Slack; to secure its discount at bank, he procured Kirk's endorsement who placed his name above Slack's. Slack paid one-half the note; Kirk under threat of suit by the bank paid the other half. *Held,* that Kirk could recover from Slack the amount paid by him.

2. Slack by his endorsement was liable to the bank for the amount of the note.

3. As to the bank, Slack could set up neither the Statute of Frauds nor Kirk's want of liability.

4. Slack could not object to payment to any transferee of the bank or to any one rightfully paying the bank and entitled to substitution to its rights.

5. Kirk as irregular endorser was the only one who could set up the Statute of Frauds, and if he, although an irregular endorser, chose to comply with his parol promise to pay, no one could object.

6. Kirk had a right to pay if he would, and having paid, to be subrogated to the rights of the bank.

7. There was a moral obligation on Kirk to perform his promise to pay the bank, and this followed by actual payment constituted his equity and entitled him to substitution.

8. On paying the bank, Kirk was entitled to the note and could claim as holder under Slack's blank endorsement.

January 18th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county:* To January Term 1871, No. 24.

This was an action of assumpsit by James S. Kirk against Timothy Slack, to recover the sum of $310.20, the amount paid by the plaintiff to the National Bank of Oxford, on a note drawn by Thomas & J. P. Scott and endorsed by the plaintiff and defendant.

The plaintiff gave in evidence the note and its endorsements as follows and rested.

"Oxford, October 1st 1868.

"Sixty days after date, we promise to pay to the order of Timothy Slack, at the National Bank of Oxford, one thousand dollars, without defalcation, for value received.

"THOMAS & J. P. SCOTT."

Endorsed as follows:—

"THOMAS & J. P. SCOTT.
"JAMES S. KIRK.
"TIMOTHY SLACK.
"THOMAS & J. P. SCOTT."

[Slack *v.* Kirk.]

Endorsed :—

" Amount due on this note January 28th 1869,    .    $1009.73

| | | |
|---|---|---|
| " Paid by T. & J. Scott, | . . | $389.33 |
| " " Timothy Slack, | . . | 310.20 |
| " " James S. Kirk, | . . | 310.20 " |

The defendant called William T. Fulton, Esq., who testified :—

" This note was placed in my hands, as attorney of the National Bank of Oxford, for collection. I was directed to collect half from each of these parties, and if they refused to pay, to bring suit. Slack said he was ready at any time to pay half of it. Kirk objected to paying any of the note. He said Slack was good for it, and he had no right to pay. I told him my instructions. He said he would pay rather than be sued, but he would have it back again. The amount due on the note January 28th 1869, was $1009.73. Mr. Scott had on deposit in bank, $329.33, which was deducted. This left $620.40, which was paid equally by Kirk and Slack."

He also called Thomas Scott, who testified :—

" I called on Slack to see if he would endorse for me for a certain amount if I could get another good man to go along. He said he would. I named Kirk. I saw Kirk. He asked who Slack was—said he didn't know him. I told him who he was. He then said he knew him, and consented. He said he would go to the bank, and went with me. We made our statement before the president. They both endorsed the note for $1200 at 60 days. I got the money. When the note matured I had the money to take it up. I consulted the endorsers. I wanted to use $1000 of the money again. They agreed to go on again on the same conditions as on the first note. I had a note endorsed by Slack when I went to Kirk."

The defendant closed.

The plaintiff called James S. Kirk, who testified :—

" Mr. Scott came to father's and said he had a note with a good man on it and wanted the money on it. I told him I had no money. He said you can soon raise the money on it. I told him I thought not, the banks are very tight. * * * I went with him to Oxford, and went to Dickey's and asked if they had money. I told Mr. Ramsey a man wanted money. I told him Timothy Slack's name was on the note. I didn't know Slack. Ramsey said he was good for twenty thousand dollars, and he would go with me to see the president of the bank. They agreed to give him the money if I would put my name on the note—endorse. They all said he was good. I then endorsed the note, after I understood Slack was responsible. Mr. Scott never said anything to me about becoming joint endorser with Slack. Slack's name

[Slack *v.* Kirk.]

was on both notes before I endorsed. * * * Mr. Dickey (president of the bank) said they would give him the money if I would endorse. I endorsed the second note with the same understanding as the first."

The defendant submitted this point:—

" The plaintiff, under the circumstances proved in this case, was not liable to the National Bank of Oxford, and his payment of $310.20 to the attorney of the bank was voluntary, and no action can be maintained by him against the defendant to recover the money so paid."

The court reserved the question in the point, and on the facts the jury found a verdict of $329.78 for the plaintiff.

Butler, P. J., entered judgment on the verdict, saying amongst other things:—

* * * " The note, as we have seen, was drawn by the Messrs. Scott in favor of Slack, and by him endorsed. The name of Kirk, however, is written above Slack's. And if we could look no further, could see nothing that does not appear upon the paper, we would be compelled to regard him as having endorsed irregularly (before Slack). And then, according to the doctrine of Taylor *v.* McCune and the cases following it, we would have to hold that he is under no obligation to the bank, inasmuch as the payee's name was not written above. But if we may look further, and see the order in point of time, in which the paper was endorsed, we will find that while Kirk appears to have gone irregularly upon it (by endorsing prior to the payee), *the fact is otherwise;* that Slack first endorsed the paper and delivered it to one of the drawers, who in company with Kirk applied to have it discounted, and was promised the money if he would endorse; that he did then endorse and the money was paid over. If we may thus look into the circumstances attending the execution of the paper, all appearance of irregularity will disappear, and Kirk will be seen to be the *second endorser*. In such case it will be immaterial where his name is found; the law will treat it as if in its proper place. He could not, if he designed, vary the effect of his act by selecting a particular place for his signature. But here there was no such design; the name was misplaced by mistake. Kirk himself testifies that the bank required him to endorse, as the condition on which the money would be furnished; and that he accordingly did so. That he intended to do so in the usual way and with the usual effect, cannot be doubted. Any other suggestion would be wholly inconsistent with the purpose in view. Placing his name above the payee's directly tended to defeat this purpose, for without explanation (by reference to the circumstances), it created no obligation whatever. Indeed if the defendant's position (that no explanation can be heard, that the paper alone can be looked to) is correct, it was (if designed) an act of

[Slack v. Kirk.]

pure folly, for it had not the slightest effect, but left the parties precisely as they were before. It would seem to be clear therefore that the name was misplaced by mistake. But whether this is so or not, is immaterial; because if we may look at the facts and see that he was the second endorser, the law will hold him responsible as such, no matter how his name came to be misplaced." * * *

After stating the grounds on which he held that the facts he referred to might be considered, he concluded :—

" In our judgment, Kirk was regularly upon the note as second endorser, and thus was liable to the bank. We must therefore answer the defendant's point in the negative, and allow the verdict against him to stand."

The defendant took out a writ of error and assigned for error that the court erred in not entering judgment for the defendant, notwithstanding the verdict.

*R. T. Cornwell* and *W. Darlington*, for plaintiff in error.—The National Bank of Oxford could not have recovered against Kirk, he was an irregular endorser : Schafer v. Farmers' & Mechanics' Bank of Easton, 9 P. F. Smith 144. Under no circumstances can he be liable to the payee : Murray v. McKee, 10 P. F. Smith 35. The decision of the court is directly in conflict with the Act of April 26th 1855, sect. 1, Pamph. L. 308; Purd. 497, pl. 4. Without parol evidence Kirk was not liable for Scott's debt to any one: Herrick v. Carman, 12 Johnson 160.

*J. J. Lewis*, for defendant in error.—The Act of 1855 does not forbid showing mistake. The proof rebuts an implied fraud in Kirk, which would arise from Slack's endorsement below his and thus negotiating the note : Barto v. Schmeck, 4 Casey 451; Brown on Frauds, sect. 406. Parol proof is allowable to show when a guaranty was made : Leonard v. Vredenburg, 8 John. R. 29. The evidence on that case was at first rejected on the authority of Wain v. Warlters, 5 East 10, but on consideration, Kent, C. J., granted a new trial : Union Bank v. Cosier's Exrs., 3 Comstock 210; Baily v. Freeman, 11 John. 221: De Wolf v. Rabaud, 1 Peters 498; Moies v. Bird, 11 Mass. 436; Nelson v. Dubois, 13 John. 476; Campbell v. Butler, 14 Id. 349; Sampson v. Thompson, 3 Metc. 278 ; Schafer v. Farmers' & Mechanics' Bank, 9 P. F. Smith 150. Parol proof has always been held to be receivable to show mistake or fraud : Harbold v. Kuster, 8 Wright 392; Fisher v. Deibert, 4 P. F. Smith 463; Shenk v. Robeson, 2 Grant 272; Schafer v. Farmers' & Mechanics' Bank, *supra*. The endorsements amounts to an unwritten contract on the part of the endorser with the endorsee and every subsequent holder : that the maker is competent to bind himself to payment and will pay; and that if the

[Slack *v.* Kirk.]

maker shall not pay, he, the endorser, will, on notice of dishonor: Story on Prom. Notes p. 145. One name may be written across the face of the note, and other names on the back: Chitty on Bills 147, or on another paper annexed to the note: Folger *v.* Chase, 18 Pick. 63.

The opinion of the court was delivered, February 9th 1871, by AGNEW, J.—As between the parties to the action, this case does not fall within the Statute of Frauds of 26th April 1855, requiring a writing to be signed by the party to be charged in order to make him answerable for the debt or default of another. The note upon which this question arises was drawn by T. and J. P. Scott, to the order of Timothy Slack, and endorsed by James S. Kirk, first in the order of position on the back of the note, and next by Slack, the payee. The note was discounted by the National Bank of Oxford for the benefit of the drawers, who afterwards failed to pay, except a part. The bank then collected one-half of the balance from Slack and the other half from Kirk, who paid voluntarily, but asserting at the same time Slack's liability to him. Then granting that, by reason of Kirk's irregular endorsement before Slack, the payee, neither Slack nor the bank could compel payment by Kirk, according to the decisions in Barto *v.* Schmeck, 4 Casey 447, Schaffer *v.* The Bank, 9 P. F. Smith 144, and Jack *v.* Morrison, 12 Wright 113, yet Slack, the payee and endorser of the note, was undoubtedly liable to the bank. He could set up neither the Statute of Frauds nor Kirk's want of liability, being the payee and regular endorser of the note as to the bank. He could not object, therefore, to payment to any transferee of the bank, or to any one rightfully paying the note, and entitled to substitution to the rights of the bank. Kirk, as irregular endorser, was the only party having a right to set up the Statute of Frauds, for his was the only parol agreement. But if, as an irregular endorser, liable only upon his verbal promise to be answerable to the bank for the payment of the note, he chose to comply with his agreement, who can object? Certainly not Slack, for the payment enured to his benefit, if Kirk was liable to him; and if not, it was a matter of indifference to him whether he should pay the bank or some one else who became entitled to the note. The statute was made for the protection of a party alleged to have made a verbal assumption, to be answerable for the debt or default of another; but if he admits his promise, and does not ask the shield of the statute, it does not compel him to be dishonest. Clearly Kirk had a right to pay if he would: and paying, he is entitled in equity to be subrogated to the rights of the bank, unless Slack can show that Kirk had also agreed to be liable to him for payment by the drawers. This promise, though not enforceable *against* Kirk, by reason of

[Slack v. Kirk.]

the statute, probably would be a defence to Slack. What right, then, has Slack to object to Kirk fulfilling any promise he had made to the bank to be answerable for payment of the note? Clearly he had none by reason of the face of the paper, Kirk being an irregular endorser and not liable to him, according to the cases before cited. There was a moral obligation on the part of Kirk to perform his promise to pay the bank, and this, followed by actual payment, constitutes his equity, and entitles him to substitution. If Slack claims protection against Kirk by reason of a promise to indemnify him, he must make proof of it; otherwise, why should he have any defence to Kirk, standing in the room of the bank? If it be objected that the irregular endorsement by Kirk will not in itself enable him to maintain the suit, it might be answered by saying that the action is amendable, and the name of the bank can be used for his benefit. But what is to hinder Kirk's action? On paying the note to the bank, he is entitled to delivery of it, and can claim as a holder under Slack's blank endorsement. His own name being irregularly endorsed before Slack can of itself make no difference, for he is not liable to Slack upon that endorsement, according to Barto v. Schmeck and Schaffer v. The Bank, the presumption being that he was intended to be the second endorser, and it was Slack's own wrong to endorse below him. To escape this Slack must resort to proof. But if we resort to the parol evidence in this case the same result follows. It shows that Kirk never did assume the position of first endorser intentionally, and that his name was written above Slack's by inadvertence or mistake. The note was brought to him by the drawer, with Slack's endorsement already on it, and without an intimation that he should assume the position of first endorser. He went to the bank with the drawer to assist him in having it discounted and without having endorsed it; and it was only when the bank refused the discount without his name that he endorsed the name. The order of his endorsement, it is evident, was unnoticed, or its effect unknown, as it tended rather to jeopard the security of the bank than to increase it. As the case stood, therefore, this evidence did not alter the relation of Slack to the bank, who had regularly endorsed the note as the payee, nor did it give him any recourse against Kirk. In either aspect, therefore, the plaintiff was entitled to recover the money paid by him to the bank, the payment not being voluntary in the sense of a payment by a mere volunteer, but being made on the footing of a promise to pay and an endorsement of the note. Having waived the protection of the statute, and honestly paid the bank according to his undertaking, he has a right to use the name of the bank, or to sue in his own name to recover the money.

Judgment affirmed.