## Eilbert *versus* Finkbeiner.

1. When one puts his name on the back of negotiable paper before the payee has endorsed, he means to pledge his responsibility for its payment.

2. Such endorser, in absence of a different contract, assumes the position of a second endorser, and to make him liable to any holder the implied condition that the payee shall endorse before him must be complied with to give him recourse against the payee.

3. A memorandum in writing signed by the second endorser is admissible to show that the agreement on which the endorsement was made, was a guaranty that the note should be paid to the payee, and not that the payee should stand between the endorser and ultimate liability.

4. The contents of a letter mailed by a party cannot be given in evidence without notice to produce the letter.

5. A case was heard before arbitrators. On the trial in court after the death of the defendant, the plaintiff was an incompetent witness.

March 21st 1871. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northampton county:* No. 405 to January Term 1871.

This was an action of assumpsit commenced, November 4th 1868, by Gottlieb Eilbert against Michael Finkbeiner on the following note:—

"$100. "Philadelphia, July 19th 1867.

"Six months after date I promise to pay to the order of Gottlieb Eilbert one hundred dollars, value received, with eight per cent. interest. HENRY FINKBEINER,

No. 1340 Girard Ave. Phila. Pa."

(Endorsed) MICHAEL FINKBEINER.

[Eilbert *v.* Finkbeiner.]

The plaintiff declared on the common counts.

Also that Henry Finkbeiner drew the note, and that it was endorsed by defendant in consideration of a loan of $100 to Henry as therein specified and he guarantied to Eilbert its payment according to its tenor and effect.

Also, in consideration that Eilbert would lend to Henry on the note of Henry then made and endorsed by defendant, the defendant would guaranty the payment of the note to the plaintiff according to its tenor and effect.

Also, for money lent to Henry by the plaintiff, with the advice and at the instance of the defendant, Henry delivered the note, endorsed and guarantied by the defendant; but neither paid the note and it was protested, &c.

Also, the note being protested, after notice to the defendant, he, by his "promise, guaranty and undertaking in writing, upon himself did assume, on consideration that the plaintiff would forbear until the 1st of April 1868, to pay the note."

Also, the note being dishonored, &c., by the defendant, he, after the dishonor, did promise in writing to pay the note after bringing suit.

Also, in consideration that the plaintiff would forbear bringing suit, the defendant promised in writing to pay the note, and the plaintiff did forbear to bring suit.

Also, that the defendant made his memorandum and note in writing "signed by him," by which he promises to answer for the debt and default of Henry and to pay the note.

A rule of reference was taken out. The arbitrators found for the plaintiff $114.28. The defendant appealed and pleaded non assumpsit. He afterwards died, and John Finkbeiner, as administrator, was substituted.

On the trial, January 26th 1871, the plaintiff made the following offers of evidence, all of which were rejected and several bills of exception sealed.

1. The note.

2. Letter dated January 30th 1868 from defendant to plaintiff, viz. :—

"Mr. Gottlieb Eilber: These lines are to inform you that I have just received a notice from Julius Wolff concerning those hundred dollars which my son Henry borrowed from you on 19 1867. Don't be afraid about it; the money is safe; if Henry does not pay I shall pay it. I only pray you not to cause any costs. Please answer immediately."

3. Letter. Same to Same, March 20th 1868 :—

"I have just received your letter of the 13th of this month. The second letter from your notary I did not receive. I pray you not to cause any further costs. I can and will pay you the money honestly. I thought it was paid, because I received no

[Eilbert *v.* Finkbeiner.]

answer for such a long while.   To-morrow I would have gone to Philadelphia, but circumstances do not permit, &c. * * *  I am going to write to Henry immediately, and if he does not pay you the money until the 1st of April, please write to me immediately. I shall then immediately make settlement, &c., and if not, I shall send you the money by express. * * *  I pray you, again, don't cause any further costs.   If Henry does not, I shall settle everything.   Henry never wrote to me anything about the money, and I thought everything was settled until I received a notice from your notary, whereupon I wrote to you immediately, and since that time I have heard nothing until to-day."

4. Same to Same, April 5th 1868 :—

"The letter from Notary J. Wolff, of the 24th of March last, I have received on the 27th, and I would have answered him immediately, because the letter informed me that I must pay the money.   But not having the money together, and money being very scarce in the country, in April time, I could not appoint a certain time until yesterday, Saturday, April 4th ; the money was promised to me until the 10th of this month, and until the 11th and 13th of this month I shall send this money or bring it myself, and you may rest assured of it.   I pray you only not to cause any further costs.

"Be so kind to let Henry know that I shall pay the money and take up the note until the 11th or 13th ; maybe that he has something to pay on it."

5. Same to Same, April 10th 1868 :—

"I notify you by these lines that last evening I got that money together for you ; hundred dollars.   I believe this is the amount of the note ; and this morning I intended to start for Philadelphia to pay you the money, but I was prevented by the snow storm, and would have to travel twelve miles to Easton with horse and wagon, only on account of such a bad speculation.   I therefore hasten to inform you that the money is here ready for you.   Now I have thought how to arrange it so that you may get the money and I may get the note ; therefore, on receipt of this letter, please go to Henry and read it to him.   I hope he will at least pay the interest, or perhaps something more, and then send the note to Easton by express, and let me know it immediately by letter.   I shall then go to Easton and pay the note, because I have resolved not to pay the note until I see my name before my eyes."

6. To prove by Julius Wolff, the notary, that after he had received the note from plaintiff for protest, he gave notice to defendant, who called upon witness in Philadelphia, and desired that he should send the note to Easton by express, which was done, and that plaintiff, after receiving some of the letters from defendant, desired Wolff to forbear from making costs ; and that

[Eilbert *v.* Finkbeiner.]

witness wrote defendant a letter, stating the assent of plaintiff to the propositions contained in the letters of defendant.

7. To prove by plaintiff, as a witness, that the letters were received from the mail in Philadelphia, addressed to him.

8. To prove by Julius Wolff, that defendant, subsequently to the writing of the letters, called on witness in Philadelphia, and offered to pay Mr. Wolff, as the agent of plaintiff, the note in suit, in pursuance of his written undertaking, set forth in the letter; and also that defendant before arbitrators, admitted his liability to pay the note, pursuant to his written undertaking.

The court directed a verdict for the defendant.

The jury found for the defendant, and the plaintiff took out a writ of error.

He assigned for error the rejection of his offers of evidence and the charge of the court.

*R. I. Jones* (with whom was *H. G. Hartranft*), for plaintiff in error.—It is not material that the party who makes the promise in consideration of forbearance should have a direct interest in the suit to be forborne or be directly benefited by the delay: 1 Parsons on Contracts 443; Shively *v.* Black, 9 Wright 347; Jones *v.* Ashburnham, 4 East 455; Wade *v.* Simeon, 2 M., G. & S. 343; Hume *v.* Hinton, Style 305; s. c. T. Ray. 32; Giles *v.* Ackles, 9 Barr 147; Silvis *v.* Ely, 3 W. & S. 428; Kean *v.* McKinsey, 2 Barr 31. The note was sent to Easton at defendant's request; this was sufficient: Train *v.* Gold, 5 Pick. (Mass.) R. 384; Stewart *v.* McGuire, 1 Cow. 99. Granting that some evidence tended to show that defendant supposed he was liable, it was for the jury to find for whom he requested forbearance: McKean *v.* Wagonblast, 2 Grant 466; Reynolds *v.* Richards, 2 Harris 208; Watson *v.* Blaine, 12 S. & R. 136; Overton *v.* Tracey, 14 S. & R. 330; Beatty *v.* The Lycoming Fire Insurance Co., 2 P. F. Smith 456; Smith *v.* Thompson, 8 M., G. & S. 44. An acceptance is complete as soon as the letter accepting leaves the office or is beyond the reach of the writer: Taylor *v.* The Merchants' Fire Insurance Co., 9 How. 390; Dunlap *v.* Higgins, 1 H. of L. Cas. 381; Tanner *v.* Hughes, 3 P. F. Smith 290; Jones *v.* Lewis, 8 W. & S. 14.

*E. J. Fox*, for defendant in error.—Michael Finkbeiner was an irregular endorser and not liable: Schafer *v.* The Bank, 9 P. F. Smith 144. The construction of written instruments is for the court: Welsh *v.* Dusar, 3 Binn. 337; Denison *v.* Wertz, 7 S. & R. 376. It is error to leave to the jury the construction of writings: Roth *v.* Miller, 15 S. & R. 100; Reaney *v.* Culbertson, 9 Harris 507; Miller *v.* Fichthorn, 7 Casey 252. There being no legal liability on the part of Michael Finkbeiner, the forbear-

ance to sue him was not a sufficient consideration for a promise:
1 Parsons on Contracts 366; Hamaker v. Eberley, 2 Binn. 509.
The verbal promise by Michael Finkbeiner in Philadelphia to pay,
and the admission before the arbitrators that he was liable, being
without consideration was a *nudum pactum* and void, because not
in writing: Parker v. Carter, 4 Mumford 273; Bixler v. Ream,
3 Penna. R. 285; Snevily v. Read, 9 Watts 396; Logan v. Mat-
thews, 6 Barr 417.

The opinion of the court was delivered, March 30th 1871, by

SHARSWOOD, J.—Nobody ever doubted that when a man puts
his name on the back of negotiable paper before the payee has
endorsed it, he means to pledge, in some shape, his responsibility
for the payment of it: Kyner v. Shower, 1 Harris 446.  This
court finally settled that in the absence of legal evidence of any
different contract, he assumes the position of a second endorser;
and that to render his engagement binding as to any holder of
the note the implied condition that the payee shall endorse before
him must be complied with so as to give him recourse against such
payee: Schafer v. The Farmers' and Mechanics' Bank, 9 P. F.
Smith 144.  Prior to January 1st 1856, when the Act of April
26th 1855, Pamph. L. 308, went into effect, it could have been
shown by parol evidence that the intention of the irregular
endorser was to guarantee the payment of the note to the payee:
Leech v. Hill, 4 Watts 448; Taylor v. McCune, 1 Jones 460.
The Act of 1855, by providing that no action shall be brought
" whereby to charge the defendant upon any special promise to
answer for the debt or default of another, unless the agreement
upon which such action shall be brought or some memorandum or
note thereof shall be in writing and signed by the party to be
charged therewith or some other person by him authorized," made
parol evidence of such a guaranty unlawful: Jack v. Morrison, 12
Wright 113.  But surely under the statute a memorandum in
writing signed by the party is admissible to show that the agree-
ment upon which the  endorsement was made was a guaranty that
the note should be paid to the payee; and not that the payee
should stand between the endorser and ultimate responsibility.
Now the letters which were offered in evidence and rejected by
the  court were clearly of this character.  They were addressed
to Eilbert the payee, and acknowledged the writer's liability to
him on the loan which he had made to his son Henry, the maker
of the note, on July 19th 1867, which is its date; so that the identity
of the transaction referred to with the note in suit is beyond all
doubt.   He promises to pay if Henry does not.   Had these letters
been addressed to a subsequent holder, it might have been sup-
posed that the acknowledgment of liability was a mistake in
law, since without Eilbert's endorsement he would not be liable

[Eilbert *v.* Finkbeiner.]

to such subsequent holder. But the acknowledgment here being to Eilbert, the payee, there could have been no mistake. He admits a liability to Eilbert, the payee, himself, which is entirely inconsistent with the notion that he had put his name on the back of the note upon condition that Eilbert should take the position of first endorser. Moreover these letters contain a promise to pay upon the consideration of forbearance—not to cause any further costs; and as an independent original contract would have been admissible under the special declaration, and would have entitled the plaintiff to a verdict unless some defence were made out.

There is nothing in the 2d assignment of error. The plaintiff could not give evidence of the contents of a letter mailed by him to the defendant, without having first given him notice to produce it. As to the 3d error assigned; the plaintiff was clearly an incompetent witness against the administrator defendant; nor was the evidence at all material, for surely the possession and production by the plaintiff of the letters was quite enough to show that they had been received. The offers referred to in the 4th and 5th assignments were of parol evidence to prove what was clearly a promise to pay the debt of another, and therefore inadmissible under the Act of 1855.

Judgment reversed, and *venire facias de novo* awarded.