BENNETT TEMPLE v. ABIGAIL BAKER ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF DELAWARE COUNTY.

Argued February 11, 1889—Decided April 29, 1889.

[To be reported.]

*(a)* The defendant in an action upon a negotiable note, had written his name on the back of the note and also under the words, "credit the drawer," on its face, before it was signed by the maker or the blank filled up with the names of the payees, whose names were afterwards placed on the back of the note below the name of the defendant.

1. In such case, the irregular indorsement of the defendant imposed upon him the liabilities of a second indorser and did not make him liable to the payees.

2. His indorsement could not be turned into a contract to guarantee pay-

### Statement of Facts.

ment of the note, by parol testimony, because of the provisions of the act of April 26, 1855, P. L. 308.

3. The words, " credit the drawer," implied no promise or undertaking on the part of the defendant, but were a direction to all persons to whom the note might be presented, to treat with the drawer as the owner.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 91 July Term 1887, Sup. Ct.; court below, No. . . .
. . . . . 1885, C. P.

On November 5, 1885, an action of assumpsit was brought by Abigail Baker, Caroline J. Baker, Frederick W. Baker, Jeremiah M. Baker, James A. Baker and Levis G. Baker, heirs at law of William Baker, deceased, against Bennett Temple, to recover upon a note of which the following is a copy:

" $1,000.                West Chester, Pa., October 25, 1882.

" One hundred and fifty-eight days after date we promise to pay to the order of Administrators of William Baker, at the First National Bank of West Chester, One thousand dollars, without defalcation, for value received.

" Credit the drawer.            ALFRED MANCILL & SON."
                    [Indorsed].
                Bennett Temple.
                Frederick W. Baker.
                James A. Baker.
                Levis G. Baker.

The plaintiffs declared against the defendant as one of the makers of the note, also as a guarantor thereof, also as an indorser thereof, and upon the common counts. The defendant pleaded, non assumpsit.

At the trial on March 14, 1887, before CLAYTON, P. J., the jury returned the following special verdict:

That the note in suit was given by the makers to the holders to secure hand-money for the purchase money of real estate which the makers afterwards refused to take. The said real estate was the property of and sold by the present holders of the note.

That the administrators were made payees of the note for the use of the heirs, the present holders.

That the note was indorsed by Bennett Temple, the defendant, in blank.

Opinion of Court below.

That his name was written under the words, " credit the drawer," at the same time his indorsement was made, and none of the blanks were then filled.

That the words " administrators of William Baker " were written as payees after the said indorsement by B. Temple, and after his name on the face of the note under the words, " credit the drawer."

That the indorsement by the administrators was made after the indorsement of Bennett Temple had been written on the note.

That the plaintiffs have exhausted their legal remedies against the makers of said note and have not been able to realize because of insolvency.

That they are ignorant of the law. If the court shall be of opinion upon the above facts, that the plaintiffs are entitled to a verdict, then they find for the plaintiffs for $1,237.50, otherwise we find for the defendant.

On May 2, 1887, a rule for judgment for the defendant on the special verdict, was discharged, the court, CLAYTON, P. J., filing the following opinion :

The suit was upon a promissory note, irregularly indorsed by the defendant. In addition to the irregular indorsement, the defendant had also written on the left of the margin at the bottom of the note the words, " credit the drawer," and had signed his name to these words. The jury found the following special verdict : . . . . .

The questions raised by the special verdict are two :

1. Whether the words, " credit the drawer," signed by the defendant, are not a sufficient memorandum in writing to take the case out of the operation of the statute of frauds, and make the defendant liable as a guarantor of the note.

2. Whether the evidence, in connection with the said words, " credit the drawer," is not sufficient to create an original agreement or understanding that the defendant should be primarily liable to the holder of the note for value.

The case is certainly a very interesting one, and the questions involved have never been directly decided in Pennsylvania. If it were not for the words " credit the drawer " separately signed by the defendant, the case would be undoubtedly ruled

Opinion of Court below.

in favor of the defendant by the case of Schafer v. Bank, 59 Pa. 144. In the case of Roth v. Barner, 2 Penny. 214, these words were held as having some bearing upon the question of collateral or original undertaking. The special contract, implied as well as expressed by the use of the words above mentioned, would seem to so connect the defendant with the making of the note and its consideration, as to make him equally liable with the makers.

To give full effect to the contract intended to be expressed by the words referred to, let us suppose the contract, intended to be expressed, had been written on a separate instrument. It would read as follows: " A. Mancill & Son have this day made their promissory note for $1,000, which I have indorsed for their accommodation. The person to whom said note may be given for value is hereby authorized to give credit to said A. Mancill & Son." Signed by Bennett Temple, and dated the same day the note bears date.

What would be the proper construction of such a paper in the hands of the plaintiffs, together with the note, for full value? If it is a collateral undertaking to answer for the default of the makers, is it not a sufficient memorandum in writing, signed by the party to be charged? Bearing even date with the note and signed by the person who had indorsed the note, though in such a way as not to make him liable as indorser, would not its effect be to make him liable as an original party to the note ? If the defendant was a party to the original contract, the evidence need not be in writing. In such a view of the case the jury could look at the note, the indorsement, the words " credit the drawer," and all the parol testimony, and say whether the contract was original or collateral: Leech v. Hill, 4 W. 448; Schafer v. Bank, 59 Pa. 149.

The reason given in Schafer v. Bank, p. 150, for relieving the irregular indorser is as follows: " He might well argue : This note cannot be discounted without the name of the payee upon it, and if it be written over my name it will not be an assignment to me but to some subsequent holder. No bank or other cautious party will take it upon my responsibility without an explicit understanding with me on the subject." Are not the words " credit the drawer," signed by the indorser upon another part of the note, a sufficiently explicit under-

standing with him upon the subject? Would not an ordinarily cautious man when he noticed the irregular indorsement, naturally look to the additional signature as intended to create a liability, notwithstanding that the indorsement in itself did not?

After a careful consideration of the whole case I am of the opinion the plaintiffs are entitled to judgment on the special verdict. So ordered.

Judgment having been entered in favor of the plaintiffs, the defendant took this writ, assigning as error the entry of judgment for the plaintiffs, and not for the defendant.

*Mr. W. B. Broomall*, for the plaintiff in error:

Under the act of April 26, 1855, P. L. 308, the defendant, Temple, can be held for the debt of Alfred Mancill & Son, only if his agreement to become responsible, or some note or memorandum thereof, be in writing and signed by him. Does either the signature of Temple on the back of the note, or his signature under the words, " credit the drawer," on the face of the note, comply with the requirement of the statute?

1. First as to the indorsement. The payee in a note is a holder prior to an indorser, and cannot recover from the indorser by proving an oral contract on the part of said indorser to be responsible to him: Jack v. Morrison, 48 Pa. 113. Temple's indorsement is that of second indorser. The heirs of William Baker, who are the holders of the note, are the first indorsers: Schafer v. F. & M. Bank, 59 Pa. 144; Murray v. McKee, 60 Pa. 35. Temple could successfully maintain an action against the administrators of William Baker upon the note, as it appears to be drawn and indorsed, and in such a suit it could not be proven that Temple orally undertook to become responsible for the makers to the payees in the note: Slack v. Kirk, 67 Pa. 380; Eilbert v. Finkbeiner, 68 Pa. 243; Hauer v. Patterson, 84 Pa. 274.

2. As to the signature under the words, " credit the drawer." This phrase, " credit the drawer," has a well known commercial meaning. It is an order used on accommodation notes, by the indorser to a subsequent holder, to pay the proceeds of the note to the drawer: Steckel v. Steckel, 28 Pa. 233; Runyan v. Milli-

ken, 1 Phila. 112. Looking at the face of the note in suit and its indorsements, it is to be inferred that the note was intended to be prepared in such form that Temple would be the last indorser. It is only on this theory that the proceeds of the note could go to his credit in the bank where discounted. Being last indorser, there could be no liability from him to the payee.

3. The words, "credit the drawer," signed by the defendant, show that he was not the drawer. He was not the primary debtor. His liability is only collateral, and the effort of the plaintiffs below was to rest this collateral liability upon an oral undertaking, which cannot be done in the face of the act of 1855.

*Mr. V. G. Robinson* and *Mr. Wm. M. Hayes*, for the defendants in error:

1. Slack v. Kirk, 67 Pa. 380; Eilbert v. Finkbeiner, 68 Pa. 243, and Hauer v. Patterson, 84 Pa. 274, decide that one who indorses a note above the payee, is an irregular indorser and not liable to anybody; not to the payees, because a mere indorsement imports in law no liability to them; nor to a subsequent holder, because, in taking the note without the payee on it as first indorser, it deprives the irregular indorser of that recourse to the payees which he is entitled to have, and without which it is fair to presume he would not have indorsed the paper: See Barto v. Schmeck, 28 Pa. 451.

2. But our case rests upon the fact that the note in question shows by a note or memorandum in writing, more than an irregular indorsement. It shows that the object of the irregular indorsement was to give to the maker of the note credit with the payee; this being by the signature of Bennett Temple on the face of the note, under the words, "credit the drawer." In other words, this case belongs to the first proposition set forth in Barto v. Schmeck, 28 Pa. 451, to wit: "That where a third party indorses a negotiable note before the payee has negotiated it, he is liable to the payee if it can be proved that the object of the indorsement was to give to the maker credit with the payee."

3. The plaintiffs are not payees but indorsees. This contract, therefore, is with them, and it is all the promise in writing

that should be required under the act of April 26, 1855. The words, "credit the drawer," waive all irregularity: the irregularity of the note being in the hands and negotiated by the maker, and the irregularity of the indorsement. It says to the holders of the note, credit the drawer and I will be responsible. This agreement of waiver of irregularity is addressed to the holders, the plaintiffs; otherwise it is senseless. The nearest approach to this case is Roth v. Barner, 2 Penny. 220.

OPINION, MR. JUSTICE WILLIAMS:

The point on which this case turned in the court below has not been decided in this state, so far as we have been able to learn from a somewhat extended examination.

Like all questions affecting the liability of parties to negotiable paper, it is important and should be fully considered. It is raised upon a promissory note in the form following:

" $1,000.   West Chester, Pa., Oct. 25, 1882.   158 days after date we promise to pay to the order of the administrators of Wm. Baker, at the First National Bank of West Chester $1,000, without defalcation, for value received.

" Credit the Drawer.            ALFRED MANCILL & SON.

" BENNETT TEMPLE."

On the back of the note were the following indorsements:

Bennett Temple,
Frederick W. Baker,
James A. Baker,
Levis G. Baker.

The action is brought by the heirs-at-law of William Baker, who were the real payees and owners of the note, against Bennett Temple, whose indorsement appears on the note above that of the payees. The defence is that while Temple might be liable to an indorsee, he is not liable to the payees who are of necessity the first indorsers. The jury before whom the case was tried returned a special verdict, covering the important questions of fact, as follows: 1. That the administrators were made payees for the use of the present plaintiffs, the parties in interest. 2. That Temple wrote his name under the words " credit the drawer," and on the back of the note, before it was signed by the maker or the blanks filled up. 3. That the blanks were filled, the note signed, and the indorsement

made by the administrators after the indorsement by Temple. 4. That the plaintiffs have exhausted their legal remedies against Mancill & Son, the makers. The court below entered judgment in favor of the plaintiffs.

To sustain this judgment the liability of the defendant must rest either upon his indorsement, or upon his direction to " credit the drawer." His indorsement is of that sort described in our cases as an " anomalous " one. Though not the payee, his indorsement as to its order or place on the back of the note is first, that of the payees being under his. Before the passage of the statute of frauds in 1855, such an indorser was held liable to the payee as a guarantor, if such was the understanding when the indorsement was made, and the payee might write a contract of guaranty above the name of such indorser, and sue upon it : Leech v. Hill, 4 W. 448 ; Taylor v. McCune, 11 Pa. 460. Since 1855 these cases have been necessarily departed from so far as to require a memorandum in writing " signed by the party to be charged therewith," as the evidence of any contract of guaranty. The indorsement which imports only the commercial contract into which every indorser enters, is not such a memorandum : Jack v. Morrison, 48 Pa. 113 ; Schafer v. The Bank, 59 Pa. 144 ; Murray v. McKee, 60 Pa. 35. The result of these cases has been to fix the position and legal liability of such an indorser as that of a second indorser. He is not liable to the payee, but, if compelled by a later holder to pay, he has a right to proceed against the payee for reimbursement : Slack v. Kirk, 67 Pa. 380 ; Eilbert v. Finkbeiner, 68 Pa. 243; Hauer v. Patterson, 84 Pa. 274. Such an indorser may still be converted into a guarantor by an agreement in writing signed by him, but in the absence of the writing his liability is fixed by the law merchant : Eilbert v. Finkbeiner, supra. It is clear, therefore, that the payees cannot recover against Bennett Temple as a guarantor, because of the statute of frauds ; nor as an indorser, because they are prior parties to the note and liable to him.

The learned judge of the court below seems to have been of this opinion, for he says, " If it was not for the words ' credit the drawer,' separately signed by the defendant, the case would be undoubtedly ruled in favor of the defendant by the case of Schafer v. The Bank." He then proceeds to expand these

words into the following: "A. Mancill & Son have this day made their promissory note for $1,000, which I have indorsed for their accommodation. The person to whom said note may be given for value is hereby authorized to give credit to said A. Mancill & Son." Now, unless this is the commercial meaning of the words "credit the drawer," the statute of frauds is as clearly violated as it would be by engrafting such a guaranty upon a mere indorsement. What therefore do the words mean?

The legal relation of the parties to a bill or note to each other, is presumed to be that indicated by the order in which their names stand upon it. The maker is liable to the payee, the payee to his indorsee, and so on down the line of indorsements. The last indorsee is presumed to be the holder and owner of the note, and entitled to its proceeds. The note in question was made by Mancill & Son to the administrators of William Baker. They indorsed it. The indorsement of Temple being in law that of second indorser, he would appear to be entitled, as against the prior parties, to the proceeds of the note. The office of the memorandum we are considering, is to advise the bank or other party to whom it may be offered, that, contrary to the prima facies of the note, he is not the owner; that his indorsement is for the accommodation of the prior parties, and that as between him and them the drawer is entitled to have the proceeds of the note delivered to him, or passed to his credit. It is not a declaration that the maker is worthy of credit, nor a request that credit be given him upon the responsibility of the person signing the memorandum, but a statement that such person is not the owner in fact, though such in appearance, of the note to which the memorandum is attached, and disclaims any interest in its proceeds.

The court below was wrong in treating the words, "credit the drawer," as implying an undertaking to pay, or as affording any basis for liability on the part of Temple. It was also wrong to say that "the jury could look at the note, the indorsement, the words 'credit the drawer,' and all the parol testimony, and say whether the contract was original or collateral." Since the statute of frauds, in 1855, parol testimony is not admissible to show a contract for the payment of the debt of another if over twenty dollars in amount, and the jury had no right to consider the parol testimony on that subject.

The indorsement was entitled only to the force which the general commercial law gives it; and the direction to credit the drawer was without significancy on the question of Temple's liability as an indorser. It neither increased nor diminished his liability in any particular.

It has been urged that Roth v. Barner, 2 Penny. 214, is an authority in support of the ruling of the court below, but we do not so understand it. In that case Kline, the irregular indorser, was held liable, not upon his indorsement, or upon the words " credit the drawer," but upon a distinct and independent agreement to pay the note, founded on a sufficient consideration. In the opinion of this court, delivered by our brother STERRETT, this appears very clearly. He says, on page 219 : " In view of the explicit instructions thus given, the jury must have found that the plaintiff in error, in consideration of obtaining the confession of judgment, promised absolutely and unconditionally to pay the balance due on the note, and that the judgment for \$5,000 was given by Kline on the faith of that promise." Such a promise furnished a distinct basis for liability to the payee, on which alone the recovery against Roth rested.

On the whole case, we conclude that the plaintiffs, the payees, are not entitled to judgment on the special verdict for the following reasons :

1st. The irregular or anomalous indorsement of Temple imposed upon him the liabilities of second indorser, and did not make him liable to the payees.

2d. His indorsement cannot be turned into a contract to guarantee payment of the note, by parol testimony, because of the statute of frauds.

3d. The words, " credit the drawer," imply no promise or undertaking on the part of him who uses them, but are a direction to all persons to whom the note may be presented, to treat with the drawer as the owner, notwithstanding the apparent title of the indorsee. This was the question on which the case turned in the court below, and the only one involved which was not well settled by our own cases.

It is apparent that the application of these principles to this case leaves the plaintiffs nothing upon which to stand, and

The judgment is therefore reversed.