# Alldred's Estate (No. 1).

*Promissory notes—Indorsement—Indemnification of indorsers—Notice of protest—Corporations.*

1. Where the directors of a corporation indorse the promissory notes of the company for the benefit of the company, and thereafter accept the benefit of a deed of trust of all of the property of the company executed for the sole purpose of indemnifying them against loss by reason of their indorsement, the directors become principals and cannot rely as a defense against the payment of the notes, on the fact of nonpresentment and the lack of notice of dishonor.

*Promissory notes — Indorsement — Irregular indorsement — Act of May 16, 1901, P. L. 194.*

2. Under the Act of May 16, 1901, sec. 64, P. L. 194, a person not otherwise a party, who places his signature in blank, before delivery, on a promissory note payable to the order of a third party becomes liable as indorser to the payee and all subsequent parties. Prior to the act, the indorsement of such person would have been irregular and he would not have been liable to the payee.

Argued Oct. 18, 1910. Appeal, No. 15, Oct. T., 1910, by John Alldred and Emma A. Trautman, Executors, etc., from decree of O. C. Allegheny Co., Sept. T., 1906, No. 117, awarding distribution in Estate of William H. Alldred. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication. Before HAWKINS, P. J.
The opinion of the Supreme Court states the case.

*Error assigned* was decree awarding distribution to estate of E. E. Lusk.

*Wm. E. Schoyer,* of *Lyon & Hunter,* for appellant.

*F. R. Stoner,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 3, 1911:
This appeal is by the executors of the will of William H.

Alldred, deceased, from the decree of the orphans' court of Allegheny county, holding the estate liable by reason of the indorsement by William H. Alldred, of two promissory notes, made by the Tri-State Mining & Manufacturing Company, to the order of Mrs. E. E. Lusk.

It appears from the record that in 1903 and 1904, William H. Alldred, the decedent, was a stockholder and director in the Tri-State Mining & Manufacturing Company, a corporation organized under the laws of New Jersey, and engaged in mining operations in Tazewell and Russell counties, Virginia. On or about June 17, 1903, Mrs. E. E. Lusk loaned the sum of $2,000 to the company; and on or about June 20, 1903, loaned to it the further sum of $500. As security for these loans the company executed its demand notes to the order of Mrs. Lusk, for the respective amounts loaned. The transaction was managed by B. E. Tinstman, who was the son-in-law of Mrs. Lusk, and held a general power of attorney from her to manage her business, including the investment and reinvestment of her money. Tinstman was also treasurer of the Tri-State Mining & Manufacturing Company. He testified that he represented the company in the transaction and that the notes were not delivered to Mrs. Lusk until after the signatures of Alldred and the other directors had been placed on them. At the annual meeting of the company, January 11, 1904, the notes were indorsed by Alldred and by five other directors of the company. These directors consented to indorse the paper of the company in order to raise money for its benefit, and it was further agreed that they were to be indemnified by a deed of trust to be given by the company. They did indorse a number of notes, including three to the order of Mrs. Lusk, two of which are the basis of the claim in this case. On May 10, 1904, the company executed and delivered a deed of trust to W. P. Keil of Pittsburg, for certain real and personal property therein described, which in fact included all the assets of the corporation. The deed recited that it was in trust, and for no other

purpose than to secure the indorsers, for becoming security for the company, and for advancing money to it. Subsequently, by proceedings in Tazewell county, Virginia, where most of the company's assets were, a receiver was appointed, at the instance of the directors, and the property of the company was sold under an order of court. The beneficiaries under the deed of trust waived their right to a preference in the distribution of the proceeds of this sale, in favor of the local creditors of the company. The sale appears to have realized no more than sufficient to satisfy the claims of those creditors. The entire property was purchased on behalf of certain stockholders of the company and was transferred to a new corporation, organized by the purchasers.

At the final hearing upon this claim, the court below, sitting in banc, held that under the facts shown, the indorsers had by their own action, become principals, and were therefore bound as such by their indorsements; and that although there was no proof of demand for payment having been made upon the company, the maker of the notes, or notice of dishonor given, yet under the circumstances, this was not necessary. We agree with the court below, that the indorsers should not now be permitted to rely upon the fact of nonpresentment, and the lack of notice of dishonor; for the reason that the indorsers were indemnified against loss by the deed of trust which they provided should be given to them by the company. Having accepted this security, and taken from the company all its assets, they put themselves in the place of the makers of the notes. Notice to them of nonpayment was not therefore necessary for their protection. In Kramer v. Sandford, 4 W. & S. 328, Chief Justice GIBSON said, "An indorser is entitled to notice whenever it is necessary to protect him; for he is not presumed to have waived it to his detriment. It is useless to him, where he has taken a general assignment of the maker's effects, and thus obtained, beforehand, all the advantage that his own or the indorsee's vigilance could give him; and

it has accordingly been held that he assumes the maker's debt when he receives his means to pay it. The chance of the maker's acquirement of other property, to which he might resort if the fund in his hands should fall short, is so inconsiderable as to fall within the maxim de minimis. When the indorser, therefore, has got all which the maker possessed, he has got all which the law supposes can be of value to him." That was the case here, for by its terms, the deed of trust conveyed to the directors, to secure them from liability as indorsers, "all the property of all kinds" of the company. In Barclay v. Weaver, 19 Pa. 396, Mr. Justice LOWRIE said (p. 400): "Where the indorser is himself the real debtor, as in the case of accommodation notes and bills; or has taken an assignment of all the property of the maker as security for his indorsement; or where he can have no remedy against the maker; or in the case of the drawer of a bill of exchange, where the drawee is, and during the currency of the bill continues to be, without funds of the drawer; and in many other such cases, demand and notice are not necessary. . . . The reason is, that, in such cases, demand and notice can be of no use, and therefore the law does not require them."

In Patton v. McFarlane, 3 P. & W. 419, it is pointed out (p. 425) that a demand upon the drawer and notice of nonpayment, to the indorser of a negotiable note "may be proved by showing that the indorser, before the note became payable, accepted from the drawer an assignment of his estate, for the purpose, inter alia, of indemnifying him against his indorsement; which in fact is neither a demand, nor yet notice of nonpayment; but in law has the same effect, as it renders demand and notice unnecessary."

In the form in which the notes are drawn, Mrs. Lusk is the payee, and would therefore of necessity be the first indorser. Prior to the Act of May 16, 1901, P. L. 194, known as the Negotiable Instruments Law, the indorsements of the directors would have been held irregular,

and under a line of decisions, from Schafer v. Bank, 59 Pa. 144, down to Temple v. Baker, 125 Pa. 634, the indorsers would not have been liable to the payee. But the Negotiable Instruments Law, sec. 64, provides: "Where a person, not otherwise a party to an instrument, places thereon his signature in blank, before delivery, he is liable as indorser in accordance with the following rules: 1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties." Upon the face of the transaction, this provision makes the indorsers liable to the payee, Mrs. Lusk, or her executor. Attention is called to the fact that liability is imposed under this section of the act only where the signature is added before delivery of the instrument, and it is contended that in the present case, the notes were not indorsed until after delivery. They were dated in June, 1903, and not indorsed until January 11, 1904. The only testimony as to the actual time of delivery seems to be that of Mr. Tinstman, who was an agent of the payee, but was also a director and treasurer of the company which made the notes, and he was also one of the indorsers. He testified that the notes were in his possession from the time they were executed until they were indorsed by the directors, and that they were not delivered to the payee until after they had been indorsed. This testimony was uncontradicted, and was sufficient to justify the court below in its conclusion that the notes were indorsed before delivery.

The assignments of error are overruled, and the decree of the orphans' court is affirmed.